OLE MYHRE v. JESSE H. TROMANHAUSER and Others.[1]

June 2, 1896.

Nos. 9776—(82).

**Negligence of Master—Evidence.**

*Held*, on the evidence, it was a question for the jury whether the master was negligent in giving to a fellow servant a certain order, which resulted in injury to the plaintiff.

**Same—Order of Master.**

*Held*, under the circumstances, it was not error for the court to permit evidence of the manner or temper in which the master gave the order to the fellow servant.

Action in the district court for Hennepin county. The jury rendered a verdict in favor of plaintiff for $2,000. From an order, Jamison, J., denying defendants' motion for a new trial, provided plaintiff consented to a reduction of the verdict to $1,000, to which plaintiff consented, defendants appealed. Affirmed.

*A. B. Jackson*, for appellants.

*W. S. Dwinnell*, for respondent.

CANTY, J. Most of the facts necessary to an understanding of this case are recited in the opinion in the case of Smith v. Tromanhauser, 63 Minn. 98, 65 N. W. 144. The plaintiff in this action is the "Meyer" therein mentioned. He built the staging in the bin in which the injuries to the parties occurred; worked in this bin in building up the partition walls of the elevator; and when the heavy cross beam fell, and broke down the staging, he, with the others, was precipitated to the bottom of the bin. This action was brought to recover damages for the injuries so received by him. He had a verdict, and from an order denying a new trial defendants appeal.

It is contended by appellants that there is no substantial difference between this case and the Smith Case, either in the evidence or the principles involved, and that the verdict for plaintiff cannot be sustained. We cannot agree with appellants. Smith himself was the very man who, under the orders of Tromanhauser, took the crow-

bar, and pried the end of the beam off the wall, thereby causing it to fall and break down the scaffold. And in his case we held that, even if Tromanhauser was guilty of negligence in giving the order to pry the beam, Smith was equally guilty of negligence in obeying it; that Smith was an old experienced carpenter, who thoroughly understood the kind of work in which he was engaged, and knew all the dangers of executing the particular task in hand as well as did Tromanhauser. We held (as it was there expressed) that, under these circumstances, Smith assumed the risk of his own positive act in prying the beam off the wall.

But the testimony in the case at bar tends to prove that this plaintiff had nothing to do with the attempted insertion of the beam in the mortises cut in the partition walls, except in one instance, when Smith or Norton called him to block up the lower end of the beam, which they had been trying to insert in the mortise. After he had blocked up the end of the beam by placing some pieces of scantling under it, he went on with his work of cribbing or building up the partition walls, until Norton told him to get out of the way, as the bin was small, and he had been striking against Norton and Smith, and in that way interfering with them in their efforts to insert the beam in the mortise. He stepped back, away from them, to the other end of the bin. They both had their backs to him, and continued in their efforts to cut the mortise larger, pry a protruding spike out of it, and insert the beam into it, until finally the beam was precipitated by Smith prying it into the mortise with the crowbar, as before stated. It is true that this plaintiff cannot recover in this action on account of the negligence of his fellow servant Smith, but he may recover if he has been injured by reason of the negligence of the master, Tromanhauser. The evidence tends to prove that Tromanhauser (one of the defendant partners) gave Smith the crowbar, and ordered him to take it and pry against the upper end of the beam resting on the wall, so as to push the lower end through the mortise in the opposite wall. Smith obeyed, and the injury resulted.

Whether or not Tromanhauser was guilty of negligence in giving the order was a question for the jury, and they have found that he was. Whether or not, after the order was given, this plaintiff could or should have done anything to avert the danger, was, at most, a question for the jury. That he was an old and experienced carpen-

ter is not, under the circumstances, a controlling fact, and does not, as appellants contend, show that he assumed the risk of this negligent order. It certainly cannot be held as a question of law that he assumed a risk which came up so suddenly, and was so wholly unexpected and unforeseen, as this negligent order of Tromanhauser. Neither can it be held as a question of law that plaintiff knew the exact condition of the mortise, nor that he was in a position to know that the order was a negligent one or how it was being executed, as the evidence tends to prove that both Smith and Norton stood between him and the beam, thereby concealing much that was going on.

It is assigned as error that, against objection and exception, the witness Norton was permitted to testify that, when Tromanhauser called for the crowbar, his manner "was quite stern, repulsive, and sharp," and that when he handed the bar back to Smith, and gave the order, his manner was "about the same, decisive, as though he meant it." We cannot say that this was error. The testimony may have had a tendency to prove that Tromanhauser compelled Smith to act so promptly as not to give sufficient time to execute the order with sufficient care, or to consider the danger of executing it at all.

These are the only questions raised worthy of consideration, and the order appealed from is affirmed.